UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARLENE T. OSBORNE,

        Plaintiff,

v.                                            Case No:  6:11-cv-1971-Orl-36TBS

FOURTEEN HUNDRED OFFICE
CONDOMINIUM, INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court upon Defendant Fourteen Hundred Office Condominium, Inc.'s ("Defendant" or "Association") Motion to Dismiss Amended Complaint, filed on January 30, 2012 ("Motion to Dismiss") (Doc. 13).  Plaintiff Arlene T. Osborne ("Plaintiff") filed a Memorandum in Opposition to the Motion to Dismiss ("Response") on February 3, 2012 (Doc. 14).  The Motion to Dismiss is now ripe for review.  For the reasons stated below, the Court will deny Defendant's Motion to Dismiss.

**I.**     **BACKGROUND**[1]

This action arises from Plaintiff's allegation that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 *et seq.*, and the Florida Accessibility Code ("FAC") by not conforming public access to a commercial building, located at 1400 Michigan Street, to ADA requirements.  Amended Complaint, Doc. 11, ¶¶ 1, 8-9.

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint (Doc. 11), the allegations of which the Court must take as true in ruling on a motion to dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Food de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

Plaintiff is a seventy-two year old woman suffering from arthritis which requires her to use the assistance of a proscribed walker or motorized scooter. *Id.*, ¶¶ 1, 7. Plaintiff alleges that Defendant is a commercial association and the operator of all the common areas at an office condominium property located at 1400 Michigan Street in Orange County, Florida ("1400 Michigan Street"). *Id.* ¶ 2. The condominium unit owners at 1400 Michigan Street are professional businesses, including lawyers' offices, a dentist's office, an accountant, and a hair salon. *Id.* ¶ 3. The Association operates for the benefit of the condominium unit owners, and maintains 1400 Michigan Street's common areas. *Id.* ¶ 4. The common areas include a parking lot and sidewalk outside of the entrance doors, providing access to the various commercial condominium units. *Id.* ¶ 2.

Plaintiff scheduled an appointment for January 19, 2012 at a hair salon located at 1400 Michigan Street, Salon 1454. *Id.* ¶ 7. Prior to Plaintiff's appointment, on December 6, 2011, she visited 1400 Michigan Street to determine whether the property was in compliance with the ADA and the FCA. *Id.* Plaintiff alleges that, because of architectural barriers, she was unable to access Salon 1454 while using her proscribed walker. *Id.* Defendant is responsible for providing parking and access to the commercial units located at 1400 Michigan Street. Therefore, Plaintiff alleges that Defendant is a place of public accommodation as defined by the ADA, and is responsible for complying with the ADA. *Id.* ¶ 9; 28 C.F.R. § 36.201(a) and 26.104.

Plaintiff alleges that Defendant has violated the ADA by: (1) failing to have a single handicapped designated parking space; (2) failing to provide an accessible route from the parking lot to the entrances of the commercial condominium units at 1400 Michigan Street; and (3) having a curb ramp exceeding the acceptable grade proscribed by ADA regulations. *Id.* ¶ 12. Plaintiff alleges that Defendant has discriminated against her by denying her access to, and full

and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of 1400 Michigan Street as prohibited by the ADA. *Id.* ¶ 11; 42 U.S.C. §12182. On January 18, 2012, Plaintiff filed an Amended Complaint seeking a declaratory judgment, injunctive relief, and attorney's fees. *Id.*, pp. 7-8.

## II.   STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* at 1950. Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

Upon consideration of a Motion to Dismiss based upon Federal Rule of Civil Procedure 12(b)(6), a district court must "limit[ ] its consideration to the pleadings and exhibits attached thereto". *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Lexis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623 (11th Cir. 2008). If the parties present evidence outside of the pleadings, and the district court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Finn v. Gunter*,

722 F.2d 711, 713 (11th Cir. 1984). By contrast, when ruling upon a motion to dismiss for lack of standing pursuant to 12(b)(1), a district court may consider affidavits and other factual materials in the record. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 881 (1990); *National Ass'n of State Utility Consumer Advocates v. F.C.C.*, 457 F.3d 1238 (11th Cir. 2006).

## III. ANALYSIS

Defendant argues that Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted because Defendant is not a place of public accommodation as defined by the ADA.[2] Doc. 13, pp. 2-4; *see* 42 U.S.C. §12182(a).

### A. Plaintiff sufficiently alleges that Defendant is a place of public accommodation

In pertinent part, Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). In order to establish a Title III violation, a plaintiff must demonstrate four elements: "that (1) [the plaintiff] is an individual with a disability; (2) that defendant is a place of public accommodation; and (3) that defendant denied [plaintiff] full and equal enjoyment of the goods, services, facilities or privileges offered by defendant; (4) on the basis of [plaintiff's] disability." *Raetano v. Sardo's Pizza, Inc.*, 2010 WL 326167, *3 (M.D. Fla. 2010); *Schiavo ex rel. Schindler v. Schiavo*, 358 F. Supp.2d 1161, 1165 (M.D. Fla. 2005). Title III and its implementing regulations define "place of public accommodation" as a "facility, operated by a

---

[2] In ruling upon the sufficiency of Plaintiff's Amended Complaint, the Court will not address Defendant's additional argument that Plaintiff is filing this action in bad faith or for improper purposes including harassment against Defense Counsel, who represents Defendant in a separate action against Plaintiff's son, Russell Osborne. Doc. 13, pp. 3-6; *see* 6:11-cv-1823-MSS-KRS. The Court will only examine whether Plaintiff's Amended Complaint states a claim for relief under the ADA and whether Plaintiff has standing.

4

private entity, whose operations affect commerce and fall within at least one of twelve specified categories." 42 U.S.C. § 12181(7); *Champlin v. Sovereign Residential Services*, 2008 WL 2646627, *3 (M.D. Fla. 2008). These categories include "shopping center[s]", "accountant or lawyer" offices, "professional office[s] of health care provider[s]," and "beauty shop[s]." 42 U.S.C. § 12181(7)(E)-(F); 28 C.F.R. § 36.104.

Defendant argues that Plaintiff cannot establish the second element of a Title III claim because it does not qualify as a place of public accommodation. Doc. 13, p. 2. Pursuant to the language of the ADA, the individual owners of condominium units at 1400 Michigan Street, including Salon 1454, appear to qualify as places of public accommodation. *See* 42 U.S.C. § 12181(7)(F). Defendant contends that unlike the individual condominium owners, it is "a nonprofit association of condominium owners which does not own, operate or lease any real property nor does it provide goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." Doc. 13, p. 2. Defendant admits that it is responsible for maintaining the common areas at 1400 Michigan Street, including the parking lot, septic tank, plumbing and outdoor lighting, but argues that its duties do not "relate to providing goods, services, facilities, privileges, advantages or accommodations to the general public." *Id.* Essentially, Defendant concludes without providing any statutory or precedential support, that although it is comprised of individual public accommodations, it is not a public accommodation under the ADA.

In response, Plaintiff argues that contrary to Defendant's claim, Defendant does operate real property and provide "facilities" to the general public as part of its responsibility to maintain

the common areas of 1400 Michigan Street. Doc. 14, p. 4.[3] Indeed, the ADA's implementing regulations define "facility" to include "all or any portion of buildings, structures, sites, complexes … roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure or equipment is located." 28 C.F.R. § 36.104. The Court agrees that taking Plaintiff's allegations as true, and in light of the ADA regulations, Defendant operates real property, the parking lot and other accessory areas, and provides facilities to the public.

Plaintiff makes additional arguments for why Defendant must be considered a "public accommodation" within the meaning of the ADA.[4] Doc. 14, pp. 5-8. First, Plaintiff argues that the ADA statutory scheme demonstrates an intention to reach discriminatory activity whether practiced directly or indirectly by a public accommodation. *Id.*, p. 6. Indeed, the ADA's guidance for statutory construction provides:

> It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities or such individual or class, **directly, or through contractual, licensing, or other arrangements**, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity.

---

[3] The Court will not consider the Declaration of Condominium of Fourteen Hundred Office Condominium, submitted with Defendant's Motion to Dismiss, Doc. 13-Ex. 1. Neither party asked the Court to convert the pending Motion to Dismiss to a motion for summary judgment, and thus the court will not consider exhibits or affidavits in considering the sufficiency of the Amended Complaint. *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227 (11th Cir. 2010); *Grossman*, 225 F.3d at 1231.

[4] Plaintiff cites a settlement agreement between the Department of Justice and an association responsible for operating and managing the common areas of an office building. Doc. 14-Ex. A, Consent Agreement and Order in *United States of America v. Omega Professional Center IV Condominium Council*. Although the settlement agreement indicates that the Department of Justice took ADA enforcement action against an association responsible for maintaining common areas, including the parking lot, on behalf of a condominium office building, this settlement is not the agency's published interpretation of a federal statute, and thus cannot be afforded the discretion Plaintiff suggests. Doc. 14, p. 6; *citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

42 U.S.C. § 12182(b)(1)(A)(i) (emphasis added).  Thus, Plaintiff argues that neither Salon 1454 nor Defendant can circumvent ADA regulations for places of public accommodation merely because Defendant operates the parking lot and accessory areas on behalf of Salon 1454 and the other condominium owners.  Doc. 14, p. 7.  The Court agrees that Defendant's suggested construction of "public accommodation", in addition to lacking any case law support, would create a large loophole in ADA protection, contrary to "[t]he statutory language and legislative history [which] make it clear that the ADA was intended to have a broad, remedial purpose." *Raetano v. Kally K's, Inc.*, 2009 WL 651808, *2 (M.D. Fla. 2009); 42 U.S.C. § 12101(a)(1)-(6).

Second, Plaintiff argues that because Defendant is comprised exclusively of condominium owners of 1400 Michigan Street, themselves places of public accommodation, it is merely an agent of those owners and thus must be a public accommodation subject to the ADA. Doc. 14, p. 7.  Although Plaintiff cites no authoritative case law supporting this agency argument, the Court agrees that the statutory framework of the ADA indicates that it would be unjust for individual condominium owners to avoid liability as "public accommodations" by contracting the management of the common areas to Defendant, an association comprised entirely of public accommodations.

Upon conducting its own review of cases defining public accommodation in the context of ADA Title III, the Court notes that parking lots and accessory areas are routinely treated as part of a public accommodation and subject to the same ADA regulations. *See Champlin*, 2008 WL 2646627, *5 (finding no reason to separate the parking area from the rest of a facility in finding that residential condominiums are not public accommodations within the meaning of the ADA); *Hoewischer v. Cedar Bend Club, Inc.,* 2012 WL 2505500, *11 (M.D. Fla. 2012) (affirming that defendant's lack of handicap accessible parking spaces are among the asserted

barriers for which removal would be readily achievable). Moreover, the ADA's official Accessibility Guidelines state that providing accessible parking spaces to a place of public accommodation is the first priority for implementing the ADA's requirements. *See* 28 C.F.R. § 26.306(b).[5]

Given Defendant's admission that it operates the parking lot at 1400 Michigan Street, language and statutory construction of the ADA, and cases showing parking lots are inseparable components of public accommodations, the Court is not persuaded by Defendant's unsupported contention that it is not a public accommodation.[6] Plaintiff's Amended Complaint sufficiently alleges that Plaintiff has a disability, that Defendant is a place of public accommodation, and that Defendant denied Plaintiff equal enjoyment of its facilities on the basis of her disability. *Raetano v. Sardo's Pizza, Inc.*, 2010 WL 326167, *3; *Schiavo*, 358 F. Supp.2d at 1165. Accordingly, Defendant's Motion to Dismiss for failure to state a claim is denied.

### B. Plaintiff has sufficiently alleged standing to bring an ADA claim

Defendant states that Plaintiff's Amended Complaint must be dismissed for lack of standing to bring a claim under the ADA and FAC.[7] Doc. 13, p. 9. Article III, Section 2 of the

---

[5] A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities: (1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces. 28 C.F.R. § 26.306(b)

[6] Defendant seems to argue, presumably in the alternative, that even if it did own and operate a public accommodation, 1400 Michigan Street was built in 1987 and has not since been renovated, "indicating that the building is not required to comply with the ADA." Doc. 13, p. 6, ¶ 29. Defendant provides no support for this position. Indeed, the ADA's requirement to avoid discrimination against the disabled and remove barriers to equal enjoyment is applicable to properties existing before the ADA's passage. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).

[7] Other than stating that Plaintiff must establish that she has standing, and citing two cases, Defendant does not explain why it believes Plaintiff has not or cannot establish standing. Doc.

8

United States Constitution limits a federal court's jurisdiction to considering only actual cases and controversies. U.S. Const. Art III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The cases or controversies limitation must be strictly observed. *National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005). As the party invoking federal jurisdiction, a plaintiff has the burden to show that it has standing, which requires: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable court ruling. *Lujan*, 540 U.S. at 560-61; *Hoewischer v. Joe's Props., LLC.,* 2012 WL 139319, *3 (M.D. Fla. 2012). This injury in fact must be concrete and actual or imminent, not conjectural or hypothetical. *Id.* Additionally, when seeking injunctive relief, a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way[.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

In order to establish standing in the context of the ADA, a plaintiff must allege specific facts establishing knowledge of defendant's barriers, allowing a court to infer that if true, plaintiff could not fully enjoy defendant's facilities because of these barriers. *Campbell v. Grady's Bar, Inc.*, 2010 WL 2754328, *2 (S.D. Fla. 2010) (if plaintiff had "included facts from which the court could infer he actually encountered ADA discrimination," such as the doorway to the defendant's establishment not being wide enough to accommodate his wheelchair, the remaining allegations would have been sufficient for the court to find an injury in fact); *Hoewischer,* 2012 WL 139319, *3 (plaintiff's allegation that certain barriers "discriminated against" him, denying him "full and equal access" were insufficient because the court could not discern which barriers were actually encountered by plaintiff or what injuries he suffered); *Equal

---

13, p. 9. In its Response, Plaintiff does not address the issue of standing. *See* Doc. 14. However, because standing is required for the Court's exercise of subject matter jurisdiction, it analyzes Plaintiff's standing to claim a violation of the ADA. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

*Access For All, Inc. v. Hughes Resort, Inc.*, 2005 WL 2001740, *7 (N.D. Fla. 2005) (dismissing complaint for lack of standing as allegations did not suggest plaintiff suffered any "continuing, present adverse effect" from defendants' alleged conduct or faced any "real and immediate threat of repeated injury."). Additionally, the Eleventh Circuit holds that to seek injunctive relief under the ADA, a plaintiff must allege facts giving rise to an inference that he will suffer future discrimination by the defendant. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (holding that plaintiffs in Title II ADA case did not have standing to pursue injunctive relief remedying accessibility to courthouse because they had not attempted to return to the court and had not alleged that they intended to do so in the future.).

      Here, Plaintiff alleges that during her visit to 1400 Michigan Street on December 6, 2011, she encountered architectural barriers and was unable to access Salon 1454 with her proscribed walker.  Doc. 11, ¶ 7.  Plaintiff provides a detailed explanation of the ADA violations she encountered, including the absence of a handicapped accessible parking space in the common area which Defendant admittedly operates and maintains. *Id.* ¶ 12(a).  Having stated that she plans to return to 1400 Michigan Street to avail herself of the goods and services available at the property, Plaintiff has alleged a credible, existing and continuing threat of discrimination. *Id.* ¶¶ 7, 10.  The Court notes that Joyce Hunter, the owner of Salon 1454 and a member of Defendant, indicates that she only accepts prior clients and it is unlikely Hunter would make a future appointment with Plaintiff.  *See* Affidavit of Joyce Hunter, Doc. 13-Ex. 4, ¶¶ 4, 7, 9, 11, 12. Thus, although Plaintiff alleges that she intends to return to 1400 Michigan Street, it is not certain whether she would suffer future discrimination by Salon 1454.  Nonetheless, taking Plaintiff's factual allegations as true, she has established injury resulting on December 6, 2011 from the barriers at 1400 Michigan Street under control of the Defendant, and alleges that she

10

intends to visit the building, not only Salon 1454, "to avail herself of the goods and services offered to the public at the property". Doc. 11, ¶¶ 7, 10; *Equal Access*, 2005 WL 2001740, *6; *Raetano v. Sardo's Pizza, Inc.*, 2010 WL 326167, *2 (plaintiff's allegation that he visited defendant's restaurant prior to filing suit, that the barriers to access caused him legal harm, and that the injunction he seeks will enable him to enjoy defendant's establishment in the future were sufficient to establish standing); *Ault v. Walt Disney World Co.,* 2008 WL 2047930, *2 (M.D. Fla. 2008) (finding plaintiffs' allegations of intending to return to theme parks "at a specific point in time in the near future" was sufficient to establish standing). The Court finds Plaintiff has alleged sufficient facts to establish an injury in fact and the imminent threat of future injury required to establish standing and seek injunctive relief, at this stage of the litigation. Accordingly, Defendant's Motion to Dismiss for lack of standing is denied.

## IV.  CONCLUSION

Consequently, as Plaintiff has sufficiently alleged a claim upon which relief can be granted in the ADA context, and because Plaintiff has sufficiently alleged standing, the Court will deny Defendant's Motion to Dismiss pursuant to 12(b)(6) and 12(b)(1).

Accordingly, it is hereby **ORDERED**:

1. Defendant Fourteen Hundred Office Condominium, Inc.'s Motion to Dismiss Amended Complaint, filed on January 30, 2012 (Doc. 13) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 30, 2012.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record